ELLIS D. BLACK, APPELLANT, V. JANET E. BLACK, APPELLEE.

388 N.W.2d 815

Filed June 20, 1986.   No. 85-455.

Tom F. Wilson, for appellant.

Samuel G. Kaplan and, on brief, Karen B. Flowers of Bauer, Galter, Geier, Flowers & O'Brien, for appellee.

Susan L. Knight of Johnston, Wherry & Knight, guardian ad litem.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Caporale, J.

The petitioner-appellant husband, Ellis D. Black, questions the monetary award made pursuant to the provisions of Neb. Rev. Stat. § 42-362 (Reissue 1984), in favor of the respondent-appellee wife, Janet E. Black, on the basis that she is mentally ill. The husband assigns as errors (1) the making of any type of monetary award to the wife pursuant to § 42-362, because there was no application for such as required by the statute, (2) the awarding of alimony to the wife pursuant to § 42-362, as this statute does not provide for such, and (3) the awarding of alimony to the wife until either party dies or she remarries, as the evidence does not support such. We affirm as modified.

The Blacks were married on December 16, 1956, and reared two children, each of whom had reached the age of majority by July 31, 1984, when the husband filed his petition to dissolve the marriage.

The evidence reveals that the wife is a 50-year-old registered nurse who suffers from schizophrenia. A psychiatrist who said he had no reason to think the wife cannot take care of herself independently now and in the future nonetheless characterized her condition as "chronic . . . which will require treatment for the remainder of her life . . . ." He also stated that her ability to

live independently rested on whether or not she was willing to continue her treatment as directed. "If she decides to discontinue it or change it, she is most likely to have another episode of either depression or manic disorder which will interfere with her ability to work." A nonphysician therapist stated that "it would be difficult to be optimistic about her ability to take care of herself independently" but that if she had employment where she could take sick leave for her psychotic episodes, participated in regular psychotherapy, and fully cooperated in her medication plan, the "possibilities would be fairly favorable . . . ."

Although she worked full time at her profession from 1968 to 1971 when her husband was a full-time college student, the illness did result in the wife's hospitalization at various times throughout the marriage because of her inability to care for herself. At the time of the trial, February 21, 1985, she was working in Arizona, where she had moved to be near her parents, as a full-time caretaker for a disabled person. She was earning $500 per month in addition to her room and board, the fair and reasonable value of which is not disclosed by the record. Her testimony revealed, however, that her illness had caused her to lose her employment "many times."

Her expenses total approximately $1,200 per month, including $100 for education. Since she can no longer stand for a period of 8 hours at a time, she hopes to change her occupation to something that will enable her to sit most of the time.

Until 1968 the husband worked as a self-employed farmer and for a well driller. He then started college and obtained a B.S. degree in 1971. At the time of the trial he was employed as an industrial arts teacher at a Lincoln high school and had accumulated 36 postgraduate credit hours. He earns approximately $23,000 per year as a teacher, and in the previous year had received approximately $3,200 in income from tax-free municipal bonds. He also had income from oil and gas royalties, which in 1983 totaled approximately $5,200. In addition, he received one-half the rent from inherited farmland, his share being approximately $1,150 per year, and received interest on investments from inherited funds totaling

approximately $2,400 per year. His living expenses were estimated at approximately $800 per month.

During the pendency of these proceedings, on September 13, 1984, the wife moved for the appointment of a guardian ad litem under § 42-362, which provides:

> When the pleadings or evidence in any action pursuant to sections 42-347 to 42-379 indicate that either spouse is mentally ill, a guardian ad litem shall be appointed to represent his interests. Such guardian's fee, when allowed by the court, shall be taxed as costs, and shall be paid by the county if the parties are unable to do so. When a marriage is dissolved and the evidence indicates that either spouse is mentally ill, the court may, at the time of dissolving the marriage or at any time thereafter, make such order for the support and maintenance of such mentally ill person as it may deem necessary and proper, having due regard to the property and income of the parties, and the court may require the party ordered to provide support and maintenance to file a bond or otherwise give security for such support. Such an order for support may be entered upon the application of the guardian or guardian ad litem or of any person, county, municipality, or institution charged with the support of such mentally ill person. The order for support may, if necessary, be revised from time to time on like application.

The trial court granted that motion and appointed a guardian ad litem on September 21, 1984. On April 17, 1985, the trial court entered its decree, which in relevant part provides:

> Petitioner shall pay to respondent alimony in the sum of Five Hundred Dollars ($500.00) per month beginning the 1st day of May, 1985 and continuing on the 1st day of each month thereafter for a period of two years at which time the alimony shall be reduced to Four Hundred Dollars ($400.00) per month payable on the 1st day of each month thereafter. This provision is made pursuant to Neb. Rev. Stat., Section 42-362 as the evidence indicates that the respondent is mentally ill. Alimony shall terminate upon the death of either party or the remarriage of the respondent.

The husband first contends that the trial court was not empowered to make any monetary award to the wife under the language of § 42-362 because there had been no application therefor by the guardian ad litem.

While we agree the language of § 42-362 contemplates that the guardian ad litem or one charged with the support of the mentally ill spouse apply for a support order, the husband's contention is nonetheless without merit.

It is true that constitutional due process requires notice which advises one of the matters to be considered and which is fair in view of the circumstances and conditions existent at the time. *Benton v. Board of Ed. of Sch. Dist. No. 17*, 219 Neb. 134, 361 N.W.2d 515 (1985); *State ex rel. Douglas v. Schroeder*, 212 Neb. 562, 324 N.W.2d 391 (1982). See, also, *Tuch v. Tuch*, 210 Neb. 601, 316 N.W.2d 304 (1982).

The facts in that connection are that the wife filed for the appointment of a guardian ad litem "pursuant to Neb. Rev. Stat. 42-362" and that the trial court made the appointment 5 months prior to trial. Under those circumstances the husband had notice that the wife claimed to be mentally ill and sought to be supported by reason thereof. While it would have been better practice for the guardian ad litem to have filed an application, under the circumstances the husband did have notice of the issues involved, and the requirements of constitutional due process were met.

As to the second assignment, it is of course true that § 42-362 does not provide for the award of alimony in the sense contemplated by Neb. Rev. Stat. § 42-365 (Reissue 1984). It is clear from the trial court's language, however, that notwithstanding its use of the word "alimony," it in fact awarded the wife "support and maintenance" under the terms of § 42-362.

This, then, brings us to the husband's third and final assignment which, since no alimony was awarded, we interpret to question the adequacy of the evidence to support the order that he pay § 42-362 support and maintenance.

The husband first argues that § 42-362 contemplates only the payment of sums specifically attributable to a spouse's mental

illness. The statute, however, contains no such language. Instead, it empowers the court to order the payment of such support and maintenance "as it may deem necessary and proper, having due regard to the property and income of the parties." To that extent § 42-362 parallels the alimony contemplated by § 42-365 but provides an additional specific ground to be considered, the mental illness of a spouse.

We have held that in dealing with alimony awards under the provisions of § 42-365, reasonableness is the ultimate criterion against which to test the questions of whether alimony should be awarded and, if so, the amount and duration thereof. *McCollister v. McCollister*, 219 Neb. 711, 365 N.W.2d 825 (1985). We now hold the same ultimate criterion is to be applied in testing whether support and maintenance is to be awarded a mentally ill spouse under the provisions of § 42-362 and, if so, the amount and duration thereof.

The matter of alimony awarded under § 42-365 is a matter initially entrusted to the sound discretion of the trial judge, which award, on appeal to this court, is reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. *Sullivan v. Sullivan, post* p. 273, 388 N.W.2d 516 (1986); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986). We apply the same review to the award of support and maintenance under § 42-362.

We can find no abuse of discretion in the trial judge's award. The evidence establishes that the wife's ability to support herself is limited by virtue of her mental illness; the husband has income above his needs in an amount which exceeds the support and maintenance awarded to the wife, while the wife has needs above her income which exceed the amount of support and maintenance awarded.

It is true, as the husband points out, that allowances of alimony in the form of an annuity or requiring one to pay a fixed sum for an indefinite period of time are not favored. *Cole v. Cole*, 208 Neb. 562, 304 N.W.2d 398 (1981). As we have noted, however, although support and maintenance to a mentally ill spouse in some respects parallels alimony, the two are not the same in all respects. The condition which triggers the support and maintenance to be paid under § 42-362 is the

mental illness; thus, the payment of such support and maintenance should continue so long as, and only so long as, the mental illness continues or she acquires another husband.

Accordingly, we modify the decree of the trial court to provide that the support and maintenance to the wife shall continue only so long as her mental illness continues and she does not remarry.

AFFIRMED AS MODIFIED.