MICHAEL S. KEARNEY, APPELLANT, V.
STACEY L. KEARNEY, APPELLEE.

644 N.W.2d 171

Filed April 30, 2002. No. A-01-862.

Robert Wm. Chapin, Jr., for appellant.

Steven J. Flodman and Stefanie S. Flodman, of Johnson, Flodman, Guenzel & Widger, for appellee.

SIEVERS, CARLSON, and MOORE, Judges.

Moore, Judge.

## INTRODUCTION

Michael S. Kearney appeals from the decree of dissolution of marriage entered on June 29, 2001, by the district court for Lancaster County, which dissolved the marriage of Michael and Stacey L. Kearney. For the reasons stated below, we affirm.

## BACKGROUND

The parties began living together in 1995; were married on November 15, 1997, in Lincoln, Nebraska; and separated on February 25, 2000. The parties have one minor child, Dyllen, born March 17, 1998.

Michael filed a petition for dissolution of marriage on April 3, 2000. In his petition, Michael sought custody of Dyllen and asked the court to award him child support, to make an equitable distribution of the parties' property and debts, and to award him a reasonable amount in temporary and final attorney fees. Stacey filed a responsive pleading requesting custody, child support, spousal support, and attorney fees.

Trial was held before the court on May 8, 2001, and the evidence indicated that Stacey suffers from a mental disease, diagnosed as "Schizophrenia Affective Disorder—Depressed Type." Stacey was suicidal and experienced severe depression at times during the parties' marriage. She required hospitalization on several occasions over the 3 years prior to trial. Stacey's mental health problems became more serious after the birth of Dyllen. Michael testified that he was aware that Stacey suffered from mental health problems when they were married.

Stacey was not employed at the time of trial, although she had attempted to obtain some part-time employment against her doctor's advice. Stacey was not employed during most of the parties' marriage, nor did she attend school during that time. Stacey has been employed in the past at fast-food restaurants, convenience stores, and through various temporary service agencies, but she did not work at any of these jobs for any extensive period. When Stacey has worked, she has earned approximately $7 per hour. In the 4 or 5 years prior to trial, Stacey had not held a job for more than 1 or 2 weeks at a time.

At the time of trial, Stacey was receiving Supplemental Security Income (SSI) of $530 per month from the Social Security Administration and was eligible for low-income housing. Stacey had also applied for Social Security disability benefits for herself and Dyllen. Stacey asked the court to award any such benefits for Dyllen to Michael as long as Michael had custody of Dyllen in lieu of any child support payments. Stacey received a lump-sum payment in April 2001 from Social Security for back benefits, the majority of which she used to pay various bills. Stacey indicated that her receipt of SSI would entitle her to receive Medicaid benefits, which would pick up her medical expenses back to November of the previous year. Stacey presented exhibits detailing her significant amount of indebtedness, as well as her monthly living expenses which totaled $1,627 per month and did not include any payments toward her indebtedness.

As to her educational background, Stacey graduated from high school and completed one semester at the University of Nebraska at Kearney, where she was studying accounting, prior to moving to Lincoln with Michael. Stacey was enrolled at Southeast Community College at the time of trial to study business, taking two classes totaling 9 hours.

The court appointed a guardian ad litem to represent Stacey's interests due to her mental illness. Dr. J. Boman Bastani, Stacey's psychiatrist, encouraged Stacey to discontinue holding a job to reduce her stress level. Bastani felt that if Stacey could become asymptomatic for a period of 6 months, he might consider placing Stacey in vocational job training. Bastani was very cautious about Stacey's present ability to work, based on her inability to do so in the past. In his opinion, Stacey's prognosis was "[g]uarded at best." The guardian ad litem agreed with Bastani's assessment that Stacey was unable to be employed at the time of trial. The guardian ad litem testified further that based on her investigation, she felt that Stacey was very limited in her ability to produce income, that Stacey should have support, and that Stacey did not have the ability to provide child support for Dyllen. At the time of the guardian ad litem's written report, dated March 13, 2001, Stacey's mental illness required her to be on as many as eight different medications at one time.

The parties borrowed money from Stacey's parents throughout the marriage to pay expenses related to Dyllen's birth, to purchase a pickup truck and a van, and to purchase furniture for the marital home. Stacey's parents have continued to support her since the parties' separation, helping pay the house payments, medical insurance, vehicle insurance, and attorney fees. Stacey's mother indicated that they had paid divorce-related legal fees amounting to $2,200 up to the date of trial.

Stacey testified that although she would love to have custody of Dyllen, she felt that his care at that time would be more than she could handle. Stacey testified further regarding difficulties encountered with arranging visitation transportation during the pendency of the parties' divorce. Stacey testified that she cannot afford the extra expense of traveling to and from Omaha to see Dyllen for visitations and that when she has had to do so, she needed to borrow gas money from friends and family. Stacey also indicated that it is uncomfortable for her to have to pick up Dyllen from Michael's roommate on occasions when Michael is not present. Stacey's father expressed his concerns that although Stacey was capable of driving to and from Omaha to pick up and return Dyllen for visitations, her vehicle, which had over 130,000 miles on it, was not really "road worthy." Michael testified that he has had some problems with transporting Dyllen to and from visits, that Stacey had asked him a few times to provide transportation, and that he had been unwilling to do so.

At the time of trial, Michael had lived in Omaha with a female friend for a little more than 1 year and had been employed by LaFredo Fresh Produce for approximately 8 months as a delivery driver. Dyllen had resided with Michael in Omaha since approximately March 2000. Michael testified that he made approximately $30,000 per year in 1998 and 1999 and that Stacey did not work during that time period. Joint income tax forms admitted into evidence for 1998 and 1999 show income of $31,468 and $35,039 respectively. Michael recalled receiving gross pay of $34,549 in 1997.

With regard to his income since the parties' separation, Michael indicated that his gross wages for 2000 were $28,500, an amount due in part to his move to Omaha and change in employment. Michael testified further that when he moved to

Omaha, he took a $3 pay cut, which he had since "made up." Michael testified that he made about $1,600 per month at the time of trial, that his take-home pay from his last paycheck was $851 for 2 weeks or 80 hours with 5 hours of overtime. A pay stub from Michael's employment for the pay period from February 11 to 24, 2001, shows gross earnings of $1,197.39 for 80 regular hours and 9.77 overtime hours. This pay stub also indicates that Michael's year-to-date gross earnings through February 24, 2001, were $5,971.37. Michael testified that his hours vary depending on the number of deliveries he makes and the distance that he is required to drive and that he has worked overtime every month at his present job. Michael testified about the monthly living expenses he incurs for himself and Dyllen, which totaled approximately $1,500.

Michael did not have health insurance at his current employment, although it was available after a 3-month probation period. Michael claimed he could not afford the insurance, which would cost approximately $200 per month for himself and Dyllen. At the time Michael left his job at Lincoln Poultry, he had health insurance covering himself and Dyllen, but he did not continue Stacey's coverage under that policy. Michael indicated further that COBRA coverage was available to Stacey, but he did not pay those premiums for her.

The court entered an order on June 29, 2001, dissolving the parties' marriage and granting the permanent custody of Dyllen to Michael pursuant to the parties' oral stipulation at trial. The court found that it was in Dyllen's best interests that Michael be awarded his custody and granted Stacey reasonable rights of visitation.

The court found that Stacey should not be required to pay child support at that time because she was disabled and because of her sporadic past employment. In lieu of child support, the court ordered that any Social Security benefits available to Dyllen as a result of Stacey's disability be paid to Michael. The court further noted that any payment of child support would reduce Stacey's net income below the federal poverty level. The court attached a child support worksheet that showed Stacey's monthly net income as $548 and Michael's as $2,736.13, with monthly support figures of $127.65 and $637.35 attributed to

Stacey and Michael respectively. The worksheet also reflected that Stacey's "Section R Adjusted Monthly Share" under the Nebraska Child Support Guidelines was $50.

The court awarded each party all property then in their respective possession and specifically awarded Michael the 1987 pickup and Stacey the 1992 van. The court found that the parties should be separately responsible for any bills or debts incurred by them and specifically found that Stacey was responsible for debts amounting to at least $24,940, which amount included the $9,000 balance owed on the loans from Stacey's parents and various credit card and medical bills.

The trial court found that the evidence established that Stacey was mentally ill and that it was appropriate to enter a support order as provided by Neb. Rev. Stat. § 42-362 (Cum. Supp. 2000). The court set spousal support and maintenance for Stacey in the amount of $350 per month, which was to continue until Stacey sufficiently recovered from her mental illness, remarried, or died. The court also ordered Michael to pay $1,000 toward Stacey's attorney fee. Michael subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Michael asserts that the district court erred in (1) awarding spousal support to Stacey, (2) not awarding Michael at least the minimum level of daycare and child support for Dyllen, (3) not ordering Stacey to pay half of any medical expenses incurred by Dyllen that are not covered by health insurance, (4) requiring Michael to deliver and pick up Dyllen for visitations, and (5) awarding Stacey $1,000 in attorney fees.

## STANDARD OF REVIEW

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Carter v. Carter*, 261 Neb. 881, 626 N.W.2d 576 (2001).

■ In a de novo review on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Harris v. Harris, supra.*

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Riggs v. Riggs,* 261 Neb. 344, 622 N.W.2d 861 (2001).

## ANALYSIS

*Spousal Support.*

■ Michael first asserts that the district court erred in awarding spousal support to Stacey. The district court found that Stacey was mentally ill and ordered Michael to pay spousal support to Stacey pursuant to § 42-362 in the amount of $350 per month, continuing until Stacey has sufficiently recovered from her mental illness, marries, or dies. Section 42-362 provides as follows:

When the pleadings or evidence in any action pursuant to sections 42-347 to 42-381 indicate that either spouse is mentally ill, a guardian ad litem or an attorney, or both, shall be appointed to represent the interests of such spouse. Such guardian's fee or attorney's fee, or both, shall be taxed as costs when allowed by the court and shall be paid by the county if the parties are unable to do so. When a marriage is dissolved and the evidence indicates that either spouse is mentally ill, the court may, at the time of dissolving the marriage or at any time thereafter, make such order for the support and maintenance of such mentally ill person as it may deem necessary and proper, having due regard to the property and income of the parties, and the court may require the party ordered to provide support and maintenance to file a bond or otherwise give security for such support. Such an order for support may be entered upon the application of the guardian or guardian ad litem or of any person, county, municipality, or institution charged with the support of such

mentally ill person. The order for support may, if necessary, be revised from time to time on like application.

Reasonableness is the ultimate criterion to be applied in testing whether support and maintenance is to be awarded a mentally ill spouse under the provisions of § 42-362 and, if so, the amount and duration thereof. *Black v. Black*, 223 Neb. 203, 388 N.W.2d 815 (1986). The support and maintenance to be awarded under § 42-362 is a matter initially entrusted to the discretion of the trial judge, which award, on appeal, is reviewed de novo on the record and affirmed in the absence of an abuse of that discretion. *Id.*

Michael questions whether spousal support is appropriate in the present circumstances where he has the custody of Dyllen and is receiving no child support from Stacey. Michael suggests that in these circumstances, ordering him to pay spousal support to Stacey will effectively take away money from the support of the minor child. Michael directs us to Neb. Rev. Stat. § 42-347(4) (Cum. Supp. 2000), which states:

> Spousal support, when used in the context of income withholding or any provisions of law which might lead to income withholding, shall mean alimony or maintenance support for a spouse or former spouse when ordered as a part of an order, decree, or judgment which provides for child support and the child and spouse or former spouse are living in the same household.

We are not persuaded by Michael's argument. Section 42-347(4) merely defines "spousal support" in the context of income withholding orders and distinguishes spousal support from child support. See, also, *Kropf v. Kropf*, 248 Neb. 614, 538 N.W.2d 496 (1995) (holding that term "spousal support," as defined by Legislature, means support paid to spouse within confines of order also providing for child support). We do not find the statute to stand for the proposition that spousal support should not be awarded to a party who is not also receiving child support. Such a result would be wholly inconsistent with the intent of § 42-362.

In reviewing the award of spousal support under § 42-362, we note that the only published appellate case in Nebraska on the subject is *Black v. Black, supra*. In *Black*, the husband appealed the monetary award to the wife, made pursuant to § 42-362 on

the basis that the wife was mentally ill. The wife was a 50-year-old registered nurse suffering from schizophrenia. The evidence presented at trial indicated that while the wife had worked in the past and was capable of living independently if she continued treatment, her condition was chronic and would require treatment for the remainder of her life. The wife held full-time employment for a few years, but also lost several jobs due to her condition, and she required hospitalization at various times throughout the marriage. The trial court determined that the wife was mentally ill as defined by § 42-362 and included a provision in its decree awarding the wife monthly "alimony" which was to terminate upon the death of either party or the remarriage of the wife. On appeal, the Nebraska Supreme Court noted:

[A]lthough support and maintenance to a mentally ill spouse in some respects parallels alimony, the two are not the same in all respects. The condition which triggers the support and maintenance to be paid under § 42-362 is the mental illness; thus, the payment of such support and maintenance should continue so long as, and only so long as, the mental illness continues or [the mentally ill individual] acquires another [spouse].

*Black v. Black*, 223 Neb. 203, 208-09, 388 N.W.2d 815, 820 (1986).

The court found that the evidence established that the wife's ability to support herself was limited by virtue of her mental illness. The court further found that the husband had income above his needs in an amount exceeding the support and maintenance awarded to the wife, while the wife had needs above her income, which exceeded the amount of support and maintenance awarded. The court affirmed the trial court's award of support and maintenance to the wife, but modified the decree to provide that the support and maintenance to the wife should continue only so long as the wife's mental illness continued and she did not remarry. In the present case, the district court specifically found that Stacey was mentally ill and ordered Michael to pay spousal support to Stacey pursuant to § 42-362 in the amount of $350 per month, continuing until Stacey has sufficiently recovered from her mental illness, marries, or dies. We conclude that the award in the present case was in fact an award of "spousal

support" under § 42-362, and not an award of alimony as suggested by Michael.

In the present case, as in *Black v. Black, supra*, Stacey's ability to produce income is clearly limited by her mental illness and her living expenses and indebtedness greatly exceed that limited ability. On the other hand, Michael's net income as determined by the trial court exceeds his monthly expenses. Based on our review of the record in this case, we cannot say that the trial court abused its discretion in awarding Stacey support and maintenance pursuant to § 42-362.

*Child Support.*

 Michael next asserts that the district court erred in not awarding him at least the minimum level of daycare and child support for Dyllen and in not ordering Stacey to pay half of Dyllen's medical expenses not covered by health insurance. The main principle underlying the Nebraska Child Support Guidelines is the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000). However, a court may deviate from the child support guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. Nebraska Child Support Guidelines, paragraph C. Paragraph R of the guidelines provides as follows:

> Basic Subsistence Limitation. A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $716 net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), except minimum support *may* be ordered as defined in paragraph I above.

(Emphasis supplied.)

The trial court found Stacey's monthly nontaxable income to be $548, which appears to be roughly what Stacey was receiving in SSI. Obviously, this income is already below the poverty level without any deductions for child support. Providing for minimum support is discretionary with the court, and we find that the court did not abuse its discretion in not ordering minimum support. In so finding, we note that the court did order that any benefits available

to Dyllen as a result of Stacey's disability be paid to Michael in lieu of child support.

With regard to Michael's assertion that the district court erred in failing to order Stacey to pay at least a minimum level of day-care expenses and to pay half of any medical expenses incurred by Dyllen not covered by health insurance, we note that the child support guidelines provide as follows:

N. Child-Care Expenses. Child-care expenses are not specifically computed into the guidelines amount and are to be considered independently of any amount computed by use of these guidelines. Child-care expenses for the child for whom the support is being set . . . shall be divided between the parents in proportion to their parental contribution (worksheet 1, line 6) and shall be added to the basic support obligation computed under these guidelines. . . .

O. Health Care. Children's health care needs are to be met by requiring either parent to provide health insurance as required by state law, and the court may apportion all nonreimbursed children's health care costs between the parents according to the same formula used to determine each parent's share of support.

The above provisions of the guidelines are subject to paragraph R quoted above and the same rationale applies, namely, that requiring Stacey to pay for any daycare or medical expenses would further reduce her income which is already below the poverty level. Our review of the record leads us to conclude that Michael is better equipped at this time to provide for Dyllen's health care and daycare needs. Stacey cannot afford to pay for her own medical care much less the daycare or unreimbursed medical costs for Dyllen. Stacey was not employed at the time of trial, and her doctor and guardian ad litem both recommended that Stacey not work. Accordingly, we find that the district court did not abuse its discretion in not ordering Stacey to be responsible for a portion of Dyllen's daycare expenses and unreimbursed medical costs. Michael's assignment of error is without merit.

*Visitation Transportation.*

Michael also asserts that the district court erred in requiring him to deliver and pick up Dyllen for visitations. Although both

parties indicate in their briefs on appeal that the court made such an order, our review of the record in this matter does not reveal any such order by the district court. At trial, Stacey submitted her proposed parenting time schedule, which included a paragraph stating that "[t]he custodial parent shall provide transportation to and from each visitation with the non-custodial parent." The district court in its decree of dissolution set forth a schedule of "Respondent's Parenting Time," which closely, although not exactly, follows that schedule which was proposed by Stacey at trial; however, the schedule adopted by the court in its decree does not include any provision regarding visitation transportation. We have not been able to find any such ruling by the court on the record in our review of the bill of exceptions and transcript. Since the issue of transportation was litigated, the omission of any provision for it in the decree was plain error. We therefore remand the cause to the trial court for a determination of the visitation transportation on the record previously made below.

*Attorney Fees.*

Finally, Michael asserts that the district court erred in awarding Stacey $1,000 in attorney fees. In a dissolution of marriage case, an award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000). The evidence indicated that Stacey's parents paid Stacey's legal fees amounting to $2,200 up to the date of trial. Given Stacey's disability and the parties' respective income earning abilities, we cannot conclude that the district court abused its discretion in requiring Michael to pay $1,000 toward Stacey's legal fees in this matter.

## CONCLUSION

The trial court did not abuse its discretion in awarding Stacey support and maintenance pursuant to § 42-362. We also conclude that the district court did not abuse its discretion in not ordering Stacey to pay child support and in ordering that any benefits available to Dyllen as a result of Stacey's disability be paid to Michael in lieu of child support. Likewise, the district court did not abuse its discretion in not requiring Stacey to pay a portion of the daycare and unreimbursed medical expenses for

Dyllen or in requiring Michael to pay $1,000 toward Stacey's legal fees in this matter. Finally, we remand the cause to the trial court for a determination of the visitation transportation on the record previously made below.

AFFIRMED AND REMANDED WITH DIRECTIONS.