Even when viewed with the benefit of hindsight, counsel's decision not to call Martin as a witness was correct. It is evident from Martin's subsequent deposition testimony that she could not corroborate Branch's claim that he was alone in her home all morning before leaving to pick her up from work. Martin testified that she was with Branch in the morning until he took her to work in the afternoon. Faced with inconsistent testimony of this nature, a jury would likely have concluded that either Branch, Martin, or both of them were not telling the truth. Martin's testimony would likely have undermined Branch's credibility as to his whereabouts at the time of the crime. Based upon our review of the record, we agree with the district court that Branch has not shown that he was denied the effective assistance of counsel. The evidence does not support either the deficient performance prong or the prejudice prong of the *Strickland* standard.

## CONCLUSION

For the foregoing reasons, the judgment of the district court denying postconviction relief is affirmed.

AFFIRMED.

---

Wade B. Anderson, appellant, v.
Olive N. Anderson, appellee.
___ N.W.2d ___

Filed April 3, 2015.    No. S-14-179.

1. **Judgments: Child Support: Alimony: Taxation: Appeal and Error.** An appellate court reviews a trial court's determinations on matters such as child support, alimony, and the child dependency exemption de novo on the record to determine whether the trial judge abused his or her discretion.
2. **Judgments: Appeal and Error.** An appellate court reviewing a trial court's determination de novo on the record to determine whether the trial judge abused his or her discretion conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice.
3. **Child Support: Rules of the Supreme Court.** A court may deviate from the Nebraska Child Support Guidelines if their application in an individual case would be unjust or inappropriate.

4. ____: ____. A deviation from the Nebraska Child Support Guidelines without a clearly articulated justification is an abuse of discretion.

5. **Child Support.** A trial court may consider the status and situation of the parties, including their financial condition, in determining the amount of child support.

6. **Divorce: Property Division: Alimony.** In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.

7. ____: ____: ____. In addition to the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2008), in dividing property and considering alimony upon a dissolution of marriage, a court should consider the income and earning capacity of each party and the general equities of the situation.

8. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.

9. **Alimony.** The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support.

10. ____. In an alimony award, the ultimate criterion is one of reasonableness.

11. ____. Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award.

12. **Child Support: Taxation: Presumptions.** In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child.

13. **Child Support: Taxation: Waiver.** A court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires.

14. **Child Support: Taxation.** Allocation of the dependency exemption to the noncustodial parent is not warranted if the parent pays a relatively small amount of child support.

15. **Divorce: Attorney Fees.** A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.

16. ____: ____. In awarding attorney fees in a dissolution action, a court should consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed as modified.

Andrew M. Ferguson, of Carlson & Burnett, L.L.P., for appellant.

Karen S. Nelson, of Schirber & Wagner, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

Olive N. Anderson, a Filipino national, moved to Nebraska and married Wade B. Anderson after meeting him through an online dating service. Their marriage soured, and the court entered a dissolution decree giving Wade custody of their only child. Wade argues that the court ordered Olive to pay child support that is too low and ordered him to pay alimony that is too high. Wade further contends that the court erred by failing to require Olive to pay part of the childcare and nonreimbursed medical expenses, allowing Olive to claim the dependency exemption in even-numbered years, and awarding Olive attorney fees. We conclude that the court abused its discretion by ordering Wade and Olive to alternate the dependency exemption, but otherwise affirm.

## BACKGROUND

### FACTUAL BACKGROUND

Wade met Olive through an online dating service. Wade lived in Blair, Nebraska, and Olive lived in the Philippines with her parents. Wade made a 10-day trip to the Philippines in 2007, during which Olive conceived a child. In July 2008, Olive gave birth to a girl in the Philippines. Wade was not present for the birth but sent Olive money.

Wade started "naturalization proceedings" for his daughter after a paternity test showed that he was her father. In July 2009, Wade brought Olive and their daughter to his home in Blair. Wade testified that Olive came to the United States on a "fiancee visa." Wade and Olive married in October 2009.

Olive testified that she had never been away from her family before she moved to Blair. Olive said that she had friends and "a lot of extended family" in the Philippines, and "felt sad and fear" about leaving them.

Olive stated that she came to Nebraska so that both parents could raise her child and because Wade promised to "give [her] a better life" and help her pursue higher education.

Wade testified that he discussed college with Olive before she came to the United States. Olive testified that she would not have left her "support system" in the Philippines without these promises.

Olive has the Filipino equivalent of a high school diploma but said that her degree is not "recognize[d]" in the United States. The record shows that her lack of education limits her job opportunities. Olive speaks English, but Visayan is her "primary language."

Wade is an electrician with 20 years' experience. He is paid $31.75 an hour and works about 40 hours per week. Wade has been "steadily employed" despite some "periodic" layoffs, the most recent of which occurred in 2012. Wade said that he had to work a "supplemental job" in 2012, and his tax filings show that he earned about $29,000 of wages and unemployment benefits that year.

Olive stated that she found her first job in the United States in November 2010. Before then, she cared for her daughter and maintained the home. After Wade was laid off, Olive worked more hours to help support the family.

According to Wade, his union with Olive "went fairly smooth" for the first few months, but then "kind of waxed and waned." In July 2012, Olive told Wade that she had had an affair. In August, Olive told Wade that she was pregnant. Olive left the marital home the same month. The parties stipulated that Wade is not the biological father of Olive's second child.

Olive currently works about 16 hours a week for a car parking company, earning $8.25 per hour. Olive said that her current employer has "full-time hours available," but that the additional hours would interfere with her parenting obligations and that she wants a job that does not require her to work weekends. Olive sought other full-time jobs but encountered "difficulties" because of her parental duties and lack of education.

Regarding future goals, Olive stated that she wants to "get a GED" and study accounting at a community college. Olive said that she is ineligible for student aid because she is not a U.S. citizen.

Olive had moved to three different residences in the 10 months before trial. She testified that she currently lives with her boyfriend in Omaha, Nebraska, but that she is not "on the lease." Olive has not looked for her own apartment because she believes doing so is futile without a credit history. Olive testified that she pays $400 of rent per month and pays unspecified credit card, car, insurance, childcare, and telephone bills. Olive said that she does not have private health insurance or Medicaid coverage.

### Procedural Background

Wade filed a complaint for dissolution in August 2012, requesting sole custody of his child with Olive and child support. Olive filed an answer and counterclaim, requesting sole custody, alimony, child support, and attorney fees.

At the end of the August 2013 trial, the court awarded Wade permanent legal and physical custody of the parties' daughter. Regarding child support, the court deemed Olive capable of working 40 hours per week and earning a minimum wage. In worksheet 1 of the Nebraska Child Support Guidelines incorporated by the decree, Olive's imputed total monthly income was $1,256 and, after the subsistence limitation was applied, she would owe $169.70 of child support each month. But the decree ordered Olive to pay only $50 per month of child support. The decree stated that the deviation from the guidelines was "specifically approved by the Court based on the current financial circumstances of [Olive]." At the conclusion of trial, the court stated that the deviation was warranted because of Olive's "limited income," lack of insurance, and "other issues."

The court ordered Wade to pay Olive $600 of alimony per month for the next 60 months. The court acknowledged the relatively short duration of the marriage but found that the "unique circumstances of this case" put Olive "in a difficult situation." Wade interrupted Olive's "personal career and educational opportunity" in the Philippines by bringing her to a foreign country where she lacked a "recognized high school diploma." The court emphasized that Wade had promised to help Olive pursue an education in the United States, and it

stated that "the only way that [Olive] is going to be able to further her education is to have some kind of spousal support." The court stated that its alimony award reflected the "fairness of the situation" and gave Olive "an opportunity to try and proceed with her education and to get on her feet."

The court stated that it also relied on exhibit 33 in arriving at the alimony award. Exhibit 33 is the immigration Form I-134, an "Affidavit of Support," that is signed by Wade but not dated or notarized. The form states that the affiant agrees to "receive, maintain and support" the sponsored immigrant so that the immigrant "will not become a public charge during his or her stay in the United States." The form states that it is binding for 3 years after the sponsored immigrant's arrival in the United States. The court also received exhibit 35, which is the immigration Form I-864, a different affidavit of support. But the court said that it did not rely on exhibit 35 because Wade neither filled in nor signed the form.

The decree ordered Wade to maintain health insurance coverage for the parties' daughter and expressly ordered Olive to pay zero percent of "daycare expenses" and nonreimbursed medical expenses. The court explained that it did not order Olive to contribute to childcare and nonreimbursed medical expenses because "she is at or below the poverty level now with the child support" and because of "her current economic situation."

The decree ordered Wade and Olive to alternate the dependency exemption for their child. Wade can claim the exemption in odd-numbered years, and Olive can claim the exemption in even-numbered years if she is current on her child support.

The decree ordered Wade to pay Olive attorney fees of $4,250. The court noted that Wade had enough money to pay three different attorneys. The court also stated that the affidavit submitted by Olive's attorney was "not unreasonable."

## ASSIGNMENTS OF ERROR

Wade assigns, restated, that the court erred by (1) deviating from the child support guidelines, (2) awarding Olive an excessive amount of alimony, (3) allocating all of the cost

of childcare and nonreimbursed medical expenses to Wade, (4) ordering the parties to alternately claim the dependency exemption, and (5) awarding Olive attorney fees of $4,250.

## STANDARD OF REVIEW

[1,2] Domestic matters such as child support, alimony, and the child dependency exemption are entrusted to the discretion of trial courts.[1] An appellate court reviews a trial court's determinations on such issues de novo on the record to determine whether the trial judge abused his or her discretion.[2] Under this standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice.[3]

## ANALYSIS

### CHILD SUPPORT

Wade argues that a downward deviation of Olive's child support obligation is not warranted. He notes that he has borne the bulk of their daughter's expenses and contends that Olive is "capable of obtaining and maintaining gainful employment, enabling her potential to pay an amount that complies with the Nebraska Child Support Guidelines."[4] Wade argues that the decree did not "clearly indicate" the basis for the deviation.[5] Finally, Wade asserts that the court should not have imputed Olive's earning capacity based on the minimum wage because Olive was actually earning an hourly wage that was slightly more than the minimum.

Olive notes that the decree expressly states that the deviation is "based on the current financial circumstances of [Olive]." Reading the decree as a whole, she argues that "it is clear

---

[1] *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007); *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005).

[2] See *Gress v. Gress, supra* note 1.

[3] See *id*.

[4] Brief for appellant at 13.

[5] *Id*. at 14.

that the trial court was concerned that [her] 'economic circumstances' meant that she was near, at, or below the poverty guidelines."[6]

[3,4] In general, child support payments should be set according to the Nebraska Child Support Guidelines.[7] But a court may deviate from the guidelines if their application in an individual case would be unjust or inappropriate.[8] The court must specifically find that a deviation is warranted based on the evidence[9] and state the reason for the deviation in the decree.[10] A deviation without a clearly articulated justification is an abuse of discretion.[11]

[5] We conclude that the court did not abuse its discretion by deviating from the guidelines and ordering Olive to pay child support of $50 per month. A trial court may consider the status and situation of the parties, including their financial condition, in determining the amount of child support.[12] The decree states that the court deviated from the guidelines because of Olive's financial circumstances. Because of Olive's precarious financial situation, we cannot say that the court abused its discretion. Because the circumstances presented do not fit neatly into the calculation structure, a flexible application of the guidelines is justified.[13]

## Alimony

Wade argues that the alimony award—$600 per month for 60 months—is unreasonable in both amount and duration.

---

[6] Brief for appellee at 14.

[7] *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007).

[8] See *id*.

[9] *Gress v. Gress, supra* note 1.

[10] Neb. Ct. R. § 4-203 (rev. 2011).

[11] See *Gress v. Gress, supra* note 1.

[12] See, *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999); *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991); *Hafer v. Hafer*, 3 Neb. App. 129, 524 N.W.2d 65 (1994).

[13] See *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

Wade emphasizes that he was married to Olive for only 4 years, sent money to the Philippines before they were married, and made significant contributions to the marriage thereafter. Wade also argues that the court did not consider the uncertainty of his future income. Finally, Wade contends that the court should not have relied on the affidavit of support in exhibit 33, because "its ultimate purpose is to prevent the immigrant from relying on government support, not to facilitate unbridled support from [Wade]."[14]

Olive, of course, views it differently. She argues that the alimony is reasonable because of her lack of education and the other obstacles to her "employability" in the United States.[15] She left her family and friends in the Philippines to come to Nebraska, and she contends that she only did so after Wade promised to support her. Olive argues that exhibit 33 is evidence of Wade's promise to support her and was only one factor that the court considered.

[6,7] In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.[16] In addition to the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2008), in dividing property and considering alimony upon a dissolution of marriage, a court should consider the income and earning capacity of each party and the general equities of the situation.[17]

[8-10] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a

---

[14] Brief for appellant at 17.

[15] Brief for appellee at 17.

[16] *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

[17] *Id.*

substantial right or just result.[18] The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support.[19] The ultimate criterion is one of reasonableness.[20]

[11] Considering the "unique circumstances of this case," we conclude that the alimony award is not an abuse of discretion. As the court noted, Olive disrupted her life in the Philippines to move to Nebraska and marry Wade. The effect of dislocation on a person who moves to be with his or her spouse is relevant to alimony.[21] Furthermore, Wade earns significantly more money than Olive. It is true that alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award.[22] The court awarded alimony for the valid purpose of helping Olive "proceed with her education and to get on her feet."[23]

We are not troubled by the court's consideration of exhibit 33. The court could consider the affidavit of support—signed by Wade but neither dated nor notarized—as evidence of the parties' circumstances, a factor that § 42-365 directs courts to consider. We note that Olive did not assert an independent breach of contract claim based on Wade's obligations under an affidavit of support.[24]

---

[18] *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

[19] *Gress v. Gress, supra* note 1.

[20] See *Sitz v. Sitz, supra* note 18.

[21] See, *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Hanson v. Hanson*, 378 N.W.2d 28 (Minn. App. 1985).

[22] *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004); *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

[23] See, *Millatmal v. Millatmal, supra* note 16; *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002); *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000).

[24] See, *Naik v. Naik*, 399 N.J. Super. 390, 944 A.2d 713 (2008); Michael J. Sheridan, *The New Affidavit of Support and Other 1996 Amendments to Immigration and Welfare Provisions Designed to Prevent Aliens From Becoming Public Charges*, 31 Creighton L. Rev. 741 (1998).

## Childcare and Nonreimbursed Medical Expenses

Wade argues that the court abused its discretion by allocating none of the childcare and nonreimbursed medical expenses to Olive. The guidelines provide that childcare expenses due to either parent's employment or education and nonreimbursed reasonable and necessary health care expenses shall be allocated to the obligor parent in an amount determined by the court, so long as the court does not exceed the proportion of the obligor's parental contribution.[25] Because of the unique circumstances of this case, we conclude that the court did not abuse its discretion by expressly allocating none of the childcare and nonreimbursed medical expenses to Olive.[26]

## Dependency Exemption

Wade argues that the court abused its discretion by ordering the parties to alternate the dependency exemption. Wade contends that he should claim the exemption each tax year because he "clearly provides the child with the majority of support."[27] He urges us to not allow Olive "to reap the financial benefits of the dependency exemption," because she provides only "minimal support."[28]

[12,13] A tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony.[29] In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child.[30] But a court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax

---

[25] Neb. Ct. R. §§ 4-214 and 4-215 (rev. 2011).

[26] See *Kearney v. Kearney*, 11 Neb. App. 88, 644 N.W.2d 171 (2002).

[27] Brief for appellant at 20.

[28] *Id*.

[29] *Emery v. Moffett, supra* note 1; *Babka v. Babka*, 234 Neb. 674, 452 N.W.2d 286 (1990).

[30] *Emery v. Moffett, supra* note 1.

exemption for a dependent child if the situation of the parties so requires.[31]

[14] We conclude that the court abused its discretion by allowing Olive to claim the dependency exemption for the parties' daughter in even-numbered years. The federal government grants a dependency exemption to a parent who provides support to a dependent minor.[32] The primary purpose for permitting a trial court to reallocate the exemption is to allow the party paying support to have more disposable income from which to make such payment.[33] Accordingly, allocation of the dependency exemption to the noncustodial parent is not warranted if the parent pays a relatively small amount of child support.[34] The court ordered Olive to pay only $50 of child support. Wade's monthly share of their daughter's support is about $850. In these circumstances, Olive has not rebutted the presumption that Wade, as the custodial parent, is entitled to claim the exemption.

## Attorney Fees

[15,16] Wade argues that the trial court abused its discretion by awarding Olive attorney fees. A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.[35] In awarding attorney fees in a dissolution action, a court should consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of

---

[31] See, *id*.; *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004).

[32] *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013).

[33] See, *El-Hajji v. El-Hajji*, 67 So. 3d 256 (Fla. App. 2010); *Ford v. Ford*, 592 So. 2d 698 (Fla. App. 1991).

[34] See *McDonald v. McDonald*, *supra* note 32. See, also, *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998).

[35] *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

the bar for similar services.[36] We conclude that the trial court did not abuse its discretion by ordering Wade to pay attorney fees of $4,250.

## CONCLUSION

We conclude that the court abused its discretion by ordering the parties to alternately claim the dependency exemption for their minor child, but we otherwise affirm the decree. We modify the decree to award solely to Wade the dependency exemption attributable to the parties' daughter.

Affirmed as modified.

---

[36] *Id.*

---

State of Nebraska, appellee, v.
Derrick U. Stricklin, appellant.
___ N.W.2d ___

Filed April 3, 2015.    No. S-14-182.

1. **Trial: Joinder: Appeal and Error.** A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion.

2. **Pleadings: Parties: Judgments: Appeal and Error.** A denial of a motion to sever will not be reversed unless clear prejudice and an abuse of discretion are shown.

3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

5. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

6. **Motions for New Trial: Appeal and Error.** A trial court's order denying a motion for new trial is reviewed for an abuse of discretion.

7. **Criminal Law: Trial.** In criminal prosecutions, the withdrawal of a rest in a trial on the merits is within the discretion of the trial court.

8. **Trial: Joinder.** There is no constitutional right to a separate trial.