Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/04/2018 08:10 AM CDT

Mark A. Onstot, appellant and
cross-appellee, v. Maria D. Onstot,
appellee and cross-appellant.

___ N.W.2d ___

Filed February 9, 2018.    No. S-17-038.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Divorce: Mental Health: Appeal and Error.** An appeal involving support for a mentally ill spouse under Neb. Rev. Stat. § 42-362 (Reissue 2016) is reviewed de novo on the record and affirmed in the absence of an abuse of discretion on the part of the trial judge.

4. **Property Division.** As a general rule, property which one party brings into the marriage is excluded from the marital estate.

5. **Property Division: Proof.** The burden of proof to show that property is a nonmarital asset remains with the person making the claim.

6. **Affidavits: Records: Appeal and Error.** In order to be considered on appeal, any affidavit used on a motion before the trial court must have been offered in evidence in the trial court and made part of the bill of exceptions.

7. **Records: Appeal and Error.** The party appealing has the responsibility of including within the bill of exceptions matters from the

record which the party believes are material to the issues presented for review.

8. ____: ____. A bill of exceptions is the only vehicle for bringing evidence before the Nebraska Supreme Court. Evidence which is not made part of the bill of exceptions may not be considered.

9. **Divorce: Mental Health: Alimony.** Neb. Rev. Stat. § 42-362 (Reissue 2016) empowers the court to order the payment of such support and maintenance to a mentally ill spouse as it may deem necessary and proper, having due regard to the property and income of the parties.

10. ____: ____: ____. Reasonableness is the ultimate criterion to be applied in testing whether support and maintenance is to be awarded a mentally ill spouse under Neb. Rev. Stat. § 42-362 (Reissue 2016) and, if so, the amount and duration thereof.

11. **Divorce: Alimony: Public Policy: Legislature.** The trial court cannot condition the termination of spousal support upon cohabitation with another person, because such matters are public policy issues for the Legislature, not the courts, to decide.

12. **Divorce: Alimony: Modification of Decree.** Cohabitation, together with a showing that such arrangement improved a former spouse's overall financial condition, might warrant a modification of spousal support.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Affirmed in part as modified, and in part vacated.

Thomas J. Anderson, P.C., L.L.O., for appellant.

Robin L. Binning, of Binning & Plambeck, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Kelch, J.

## I. INTRODUCTION

Mark A. Onstot appeals, and Maria D. Onstot cross-appeals, from the decree of dissolution entered by the district court for Sarpy County, which dissolved the parties' marriage, divided their assets and debts, and awarded spousal support for Maria. For the reasons set forth below, we affirm

the district court's decree in part, as modified herein, and in part vacate.

## II. BACKGROUND

Mark and Maria were married in October 1999. Mark filed a complaint for dissolution of marriage in July 2013, and the matter proceeded to a bench trial in March and June 2016. The contested issues at trial, as relevant to this appeal, were (1) the equitable division of the house Mark owned prior to the marriage and (2) the determination of appropriate spousal support for Maria under Neb. Rev. Stat. § 42-362 (Reissue 2016).

### 1. MARK'S HOUSE

Prior to the marriage, Mark owned a house located on Platte River Drive in Bellevue, Nebraska. Mark testified that he purchased the house in 1990 for $58,800, and he believed that the mortgage at the time of purchase was $48,000. He made some improvements to the house over the following years, including installing new siding, constructing a new garage, and installing new windows and new flooring, all of which was paid for with his own money prior to the marriage. Mark testified that he believed the house was worth approximately $100,000 at the time of the parties' marriage in 1999, but there was no evidence presented regarding the balance on the mortgage at that time. There was also no documentation to confirm Mark's testimony regarding the date of purchase, the purchase price, the amount mortgaged, or the value of the house at the time of the parties' marriage. At the time of trial, the house was appraised at $200,000 and had a loan balance of $32,538.

Following a bench trial, the district court awarded the house to Mark, subject to the remaining mortgage balance of approximately $32,500, for which Mark was ordered to be solely responsible. It determined that the property was valued at $200,000 and had equity in the amount of $167,500, which it

ordered to be divided equally between the parties. It further ordered Mark to refinance, sell, or otherwise remove Maria's financial responsibility for the mortgage, and to pay Maria $83,746 for her share of the net equity in the property, within 60 days from the entry of the decree.

## 2. SPOUSAL SUPPORT

After Mark filed his complaint for dissolution, Maria filed a motion for the appointment of a guardian ad litem on the basis of mental illness, pursuant to § 42-362. In support of the motion, she submitted an affidavit from her psychologist, Dr. Glenda L. Cottam, who stated that Maria exhibited anxiety and mental illness to such a degree that her ability to think clearly and engage in appropriate reality testing was compromised and that she would not be able to act in her own best interests, make appropriate decisions, or assist her lawyer in preparing her case. The district court granted the motion and appointed a guardian ad litem to represent Maria throughout these proceedings.

Shortly thereafter, Maria filed a motion requesting temporary support in the amount of $3,000 per month, again pursuant to § 42-362. The motion itself did not include any supporting documentation as to her income or expenses, and the record on appeal does not contain a bill of exceptions from the hearing. Mark filed an affidavit in resistance to the motion for support, stating that Maria did not need $3,000 per month and that he could not afford to pay that amount. The district court awarded temporary spousal support of $1,500 per month, beginning on March 1, 2014. Because of the lack of record on appeal, it is unclear what evidence the court considered in making this determination.

In August 2015, Mark filed an application to modify spousal support, because he had just retired from his employment with the railroad and his income had been reduced to only $3,034 per month in retirement benefits. The court denied his application to modify.

The evidence at trial showed that Maria had been diagnosed with a mood disorder with some transient psychotic features, paranoia, depression, anxiety, and post-traumatic stress disorder. Regarding Maria's symptoms, Dr. Cottam testified that Maria becomes very agitated, has hallucinations, and dissociates from reality. Dr. Cottam further explained that Maria was very paranoid at times—she talked about conspiracies, "stink bombs" being set off at her place of employment, people that were out to get her, a particular woman that was always following her, and lights being shone into her apartment. She has been hospitalized on a number of occasions because her anxiety and paranoia cause her blood pressure to increase to a level that is medically dangerous. Her anxiety causes other physical symptoms as well, including swelling of her tongue, tingling in her fingers, heaviness in her body, loss of her voice, ringing in her ears, changes in her vision, and loss of coordination. Dr. Cottam opined that due to Maria's mental health issues, she was not competent to testify and was in need of a legal guardian. Because Maria was unable to testify, her guardian ad litem testified in her place at trial.

At the time of trial, the evidence showed that Maria's monthly income was $3,453, which included Social Security disability benefits, spousal benefits from the railroad, and the $1,500 temporary support payment from Mark. Her monthly expenses were $3,721, and therefore exceeded her monthly income even with Mark's temporary support payment.

Mark's monthly income at the time of trial included $3,602 in railroad retirement benefits, but he testified that he actually received only $3,100 per month after taxes. Mark also received $750 per month in rental income, but he testified that it was offset by mortgage payments and expenses for the rental property. Mark's monthly expenses were $3,954, although he acknowledged that his food expense of $700 per month and his gas expense of $400 per month were high due to his

preferences for eating out frequently and driving his truck rather than his more gas-efficient car.

In its decree, the district court found that Maria was mentally ill and entitled to protection under § 42-362. It awarded her continuing spousal support in the amount of $700 per month, beginning July 1, 2016, and continuing so long as she is mentally ill or until she remarries, the death of either party, or further order of the court. Following the entry of the decree, Mark filed a motion to alter or amend the decree, requesting that his obligation to pay spousal support would cease in the event Maria was cohabiting. The district court amended the decree to reflect that Maria's spousal support shall continue until Maria is no longer mentally ill, the death of either party, or Maria's remarriage or cohabitation with a significant other.

## III. ASSIGNMENTS OF ERROR

On appeal, Mark assigns the district court erred (1) in awarding any equity in his house to Maria or, alternatively, in failing to grant him credit for the home's value as of the date of marriage, and in requiring him to sell the property if he did not refinance or otherwise remove Maria's financial responsibility for the mortgage within 60 days and (2) in awarding excessive temporary and permanent spousal support to Maria.

On cross-appeal, Maria assigns that the district court abused its discretion in ordering that her spousal support would cease upon her cohabitation with a significant other.

## IV. STANDARD OF REVIEW

[1] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.[1]

---

[1] *Marshall v. Marshall, ante* p. 1, 902 N.W.2d 223 (2017).

[2] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue.[2] However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[3]

[3] An appeal involving support for a mentally ill spouse under § 42-362 is reviewed de novo on the record and affirmed in the absence of an abuse of discretion on the part of the trial judge.[4]

## V. ANALYSIS

### 1. MARK'S HOUSE

Mark claims the trial court erred in awarding any equity in his house to Maria or, alternatively, in failing to grant him credit for its value as of the date of marriage, and in requiring him to sell the property if he does not refinance or otherwise remove Maria's financial responsibility for the mortgage within 60 days.

Mark purchased the residence located on Platte River Drive in 1990, approximately 9 years prior to the marriage. He testified he paid $58,800 for the property and took out a mortgage for the purchase in the amount of $48,000. He opined that the residence had a value of $100,000 at the time of the marriage in 1999. The district court found the entire equity in the residence to be marital property and ordered that it be divided equally between the parties.

[4,5] Because he purchased the residence prior to the marriage, Mark claims that it is entirely premarital or, alternatively, that the equity he had prior to the marriage is premarital. As a

---

[2] *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017).

[3] *Id.*

[4] See *Black v. Black*, 223 Neb. 203, 388 N.W.2d 815 (1986).

general rule, property which one party brings into the marriage is excluded from the marital estate.[5] However, the burden of proof to show that property is a nonmarital asset remains with the person making the claim.[6]

We agree that the equity in the residence at the time of the parties' marriage in 1999 was a nonmarital asset which, if established, should be set aside as Mark's separate property.[7] However, assuming Mark's testimony established the value of the residence at $100,000 at the time of the marriage, he did not testify or supply any documentation as to whether the residence was either encumbered or unencumbered at that time and, if encumbered, to what extent. Because Mark has failed to establish that there was any equity in the house at the time of the parties' marriage, he has failed to meet his burden of proving that the property is a nonmarital asset. We therefore conclude that the district court did not err in including the entirety of the equity in the residence in the marital estate.

Mark further assigns that the district court erred in ordering him to refinance the residence and pay off Maria within 60 days of the decree. We acknowledge that the trial court has discretion in the amount of time allowed to refinance property. But, here, Mark's ability to refinance promptly has been impaired by his obligation to pay $700 per month in spousal support, especially as a retiree with a monthly net income of only $3,100. Therefore, we find that under these particular circumstances, the district court's requirement that Mark refinance the mortgage within 60 days constituted an abuse of discretion. We modify the decree to extend the time period for Mark to refinance the residence and pay off Maria to 6 months from the filing of the mandate in the district court.

---

[5] See *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

[6] *Id.*

[7] See *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). See, also, *Heald v. Heald, supra* note 5.

## 2. Spousal Support

### (a) Temporary Support

[6] Mark claims the trial court erred in awarding temporary spousal support in the amount of $1,500 per month under § 42-362. However, the record on appeal does not contain any bill of exceptions in regard to the hearing for temporary spousal support. The transcript does contain a document entitled "Affidavit in Support of Application to Re-Set Support" that was filed with the court. We have long held that an affidavit must be offered as an exhibit and must be made part of the bill of exceptions in order to be considered on appeal.[8] In *Peterson v. George*,[9] we stated:

> The fact that an affidavit used as evidence in the district court was filed in the office of the clerk of the district court and made a part of the transcript is not important to a consideration and decision of an appeal in the cause to this court. If such an affidavit is not preserved in a bill of exceptions, its existence or contents cannot be known by this court.

Here, we have no record that the "Affidavit in Support of Application to Re-Set Support" was received at any pretrial hearing. Whether the district court reviewed the affidavit or any evidence for purposes of Mark's pretrial application to reset spousal support is unknown.

[7,8] The party appealing has the responsibility of including within the bill of exceptions matters from the record which the party believes are material to the issues presented for review.[10] A bill of exceptions is the only vehicle for bringing evidence

---

[8] See, *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002); *Peterson v. George*, 168 Neb. 571, 96 N.W.2d 627 (1959).

[9] *Peterson v. George, supra* note 8, 168 Neb. at 577, 96 N.W.2d at 631.

[10] See, Neb. Rev. Stat. § 25-1140 (Reissue 2016); *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001); *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991); *State v. Schaneman*, 235 Neb. 655, 456 N.W.2d 764 (1990); *State v. Isikoff*, 223 Neb. 679, 392 N.W.2d 783 (1986).

before the Nebraska Supreme Court. Evidence which is not made part of the bill of exceptions may not be considered.[11] Without the benefit of a proper record, we will not consider this alleged error.

### (b) Continuing Support

Next, Mark claims the trial court erred in awarding continuing spousal support in the amount of $700 per month until either party dies, Maria remarries or cohabits with a significant other, or she is no longer mentally ill.

An appeal involving support for a mentally ill spouse under § 42-362 is reviewed de novo on the record and affirmed in the absence of an abuse of discretion on the part of the trial judge.[12] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[13]

Mark does not contest whether Maria suffers from a mental illness. And the district court awarded spousal support pursuant to § 42-362, which in relevant part provides:

> When a marriage is dissolved and the evidence indicates that either spouse is mentally ill, the court may, at the time of dissolving the marriage or at any time thereafter, make such order for the support and maintenance of such mentally ill person as it may deem necessary and proper, having due regard to the property and income of the parties, and the court may require the party ordered to provide support and maintenance to file a bond or otherwise give security for such support. . . . The order for support may, if necessary, be revised from time to time on like application.

---

[11] See, *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983); *State v. Gingrich*, 211 Neb. 786, 320 N.W.2d 445 (1982).

[12] See *Black v. Black, supra* note 4.

[13] *Marshall v. Marshall, supra* note 1.

[9,10] Section 42-362 empowers the court to order the payment of such support and maintenance as it may deem necessary and proper, having due regard to the property and income of the parties, and, to that extent, parallels the alimony contemplated by Neb. Rev. Stat. § 42-365 (Reissue 2016), but provides an additional specific ground to be considered—the mental illness of a spouse.[14] Further, we have held that in dealing with spousal support under the provisions of § 42-362, reasonableness is the ultimate criterion to be applied in testing whether support and maintenance is to be awarded and, if so, the amount and duration thereof.[15]

The decree does not contain any findings as to why the district court chose to award $700 per month in spousal support, which was not an amount requested by either party. Mark's gross retirement income was $3,602, but he testified that after taxes, he received approximately $3,100. Although Maria points out that Mark is now receiving $750 per month in rental income, Mark testified this was offset by mortgage payments and expenses for the rental property. Mark's monthly expenses after excluding the temporary spousal support payment and mortgage payments and expenses for the rental property is approximately $2,000. In addition, Mark acknowledged his food and gas expenses were high due to his particular lifestyle. It appears the district court found Mark's credible monthly expenses to be less than his monthly income. On the other hand, Maria had monthly income of $3,453 and monthly expenses of $3,721.

Here, the court was faced with a long-term marriage, a mentally ill spouse who has no ability at present to work, and, as in *Black v. Black*,[16] a spouse who has needs above her income which exceed the amount of support and maintenance awarded.

---

[14] *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

[15] *Black v. Black, supra* note 4.

[16] *Id.*

Certainly, the $700 spousal support obligation, coupled with Mark's other monthly expenses, may place him at or near his net income level. This is concerning and provides no flexibility for Mark, but Maria is in an even more difficult financial position. Sadly, when many couples divorce, there is not enough money to satisfy the needs of both parties. But in this instance, based upon the totality of the circumstances and evidence, we cannot find the order of spousal support was an abuse of discretion.

### (c) Cross-Appeal

The district court initially entered a decree which awarded Maria spousal support in the amount of $700 per month commencing July 1, 2016, and continuing so long as Maria is mentally ill or until she remarries, the death of either party, or further order of the court. Following the entry of the decree, the district court partially granted Mark's motion to alter or amend by ordering that the spousal support would further terminate upon Maria's cohabiting with a significant other. On cross-appeal, Maria contends that it was improper to include any provision terminating spousal support if she cohabitates with another person. And, at oral argument, counsel for Maria agreed that Maria's cohabitation with another person was not within the parties' contemplation at the time of the entry of the decree.

[11,12] Maria is correct in that we have previously held that the trial court cannot condition the termination of spousal support upon cohabitation with another person, because such matters are public policy issues for the Legislature, not the courts, to decide.[17] However, cohabitation, together with a showing that such arrangement improved a former spouse's overall financial condition, might warrant a modification of spousal support.[18] Accordingly, that part of the district court's order

---

[17] *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985).

[18] *Id.* See, also, *Stephens v. Stephens, supra* note 14.

adding Maria's cohabitation with a significant other to the list of conditions terminating Mark's spousal support obligation is hereby vacated.

## VI. CONCLUSION

We affirm in part the decree entered by the district court, as modified to allow Mark 6 months following the date of the mandate to refinance the residence and pay off Maria. We vacate the portion of the district court's order stating that Mark's support obligation would terminate upon Maria's cohabitation with a significant other.

Affirmed in part as modified, and in part vacated.

Wright, J., not participating.