Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2022 09:07 AM CDT

ANTHONY J. MONTEGUT, APPELLANT, V. TAMARA
T. MOSBY-MONTEGUT, APPELLEE.
___ N.W.2d ___

Filed June 21, 2022.    No. A-21-092.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

4. ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

5. **Divorce: Property Division: Proof.** In a marital dissolution proceeding, the burden of proof rests with the party claiming that property is nonmarital.

- 108 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

6. **Divorce: Property Division.** Property which a party brings into the marriage is generally excluded from the marital estate.

7. **Divorce: Property Division: Presumptions: Proof: Words and Phrases.** The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income. Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse. Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property.

8. **Divorce: Property Division: Equity.** Equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as the owning spouse's separate property.

9. **Divorce: Proof.** While documentary evidence is not strictly necessary for parties to carry their burden of proof in dissolution cases, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion.

10. **Trial: Expert Witnesses.** Triers of fact are not required to take an expert's opinion as binding upon them, and a trier of fact may accept or reject an opinion from an expert witness.

11. **Alimony.** In addition to the criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2016), in considering alimony upon a dissolution of marriage, a trial court is to consider the income and earning capacity of each party, as well as the general equities of each situation. In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness.

12. **Alimony: Appeal and Error.** In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed as modified.

Adam E. Astley and Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellant.

Michael B. Lustgarten, of Lustgarten Dudzinski, L.L.C., for appellee.

- 109 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Anthony J. Montegut (Anthony) appeals from an order of the Douglas County District Court dissolving his marriage to Tamara T. Mosby-Montegut (Tamara) and distributing marital property. Anthony challenges the court's classification and division of property in several respects, as well as the court's award of alimony to Tamara. For the reasons that follow, we affirm as modified herein.

## BACKGROUND

Anthony and Tamara were married in May 2010. Around that time, Tamara left her job as an attorney in New York and moved to Omaha, Nebraska, to be with Anthony, because he had two children from a prior marriage who also resided in Omaha. Anthony testified that the mother of his children "unexpectedly" left the state around 5 months after Tamara arrived in Omaha, leaving him with sole physical custody of the two children. Consequently, the parties agreed that Tamara would "stay home and help the kids to adjust for one year" in lieu of seeking full-time employment.

Thereafter, the parties desired a child of their own and thus agreed that Tamara would continue to stay home beyond 1 year. The parties' only child was born in 2013. Tamara did not seek full-time employment until 2018, when she obtained a position as an attorney at the Douglas County public defender's office, making $70,500 per year. Anthony was at all times employed as a physician, practicing emergency and family medicine. At the time of trial, Anthony was employed as the medical director at "Douglas County Corrections," making $320,000 per year.

In April 2019, Anthony filed a complaint for dissolution of marriage. In May 2019, Tamara filed an answer and counterclaim seeking dissolution of the marriage. The central dispute on appeal revolves around the classification and division

- 110 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

of certain assets accumulated by the parties both prior to and during the marriage. The following is an overview of the disputed assets.

*Tamara's First National Bank*
*Account No. 2620.*

Tamara acquired three rental properties in Texas prior to the parties' marriage in 2010. These properties were sold during the marriage, and proceeds of approximately $65,000 were deposited into Tamara's separate First National Bank account No. 2620. There is no dispute that approximately $21,000 of the proceeds was used to pay taxes owed by the parties jointly and that approximately $43,000 remained in Tamara's separate account at the time of trial. Tamara testified that marital funds were never commingled with the sale proceeds deposited into her separate account.

Prior to the properties' sale, the parties' tax records demonstrate that the properties operated at a significant loss from 2011 to 2014. Excluding depreciation, which both parties acknowledged was merely a "paper loss," the parties reported an actual loss of almost $75,000 over those 4 years. Because Tamara was not working at the time, these losses were covered using marital funds derived from Anthony's income. Anthony testified that Tamara paid expenses for these properties out of her separate account but that each of these payments would reflect a transfer from the parties' joint bank account. Anthony testified that his income was used to pay the mortgages on the properties "when they were empty" as well as "substantial costs in repairs to get them re-rented." Anthony added, "It was because of the amount of money that I was putting into it that I told Tamara that we needed to sell these properties so that we could stop the bleeding."

Tamara testified that the properties almost always "had tenants and would generate income [which] would be used to pay the mortgage on the[m]." Yet, apparently acknowledging periodic contributions of marital funds, Tamara added, "[I]f a tenant was late or delayed, we would have to take

- 111 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

money from the account to pay [the mortgage], but once the money came back in, it replaced the money into the account." Moreover, aside from Anthony's income, Tamara failed to indicate any other source of funds available to pay for the additional reported expenses such as insurance, repairs, and taxes. Altogether, the record indicates that marital funds, derived from Anthony's income, were used to cover substantial expenses or losses on the Texas properties.

Rather than disputing that Anthony's income was used to cover expenses associated with the properties, Tamara argued that the roughly $60,000 tax writeoff attributable to reported depreciation, along with the $21,000 payment of joint tax liabilities, amounted to an overall tax benefit to the marital estate. Anthony acknowledged both the $60,000 depreciation tax writeoff and the $21,000 tax payment. However, he also testified to his understanding that 26 U.S.C. § 1250 (2018) would have operated to "recapture" the depreciation losses when the properties were sold. The district court ultimately found that "[Anthony's] argument that the alleged tax return loss on the properties was not sufficient evidence" to result in account No. 2620's being "considered a marital asset." Accordingly, the court awarded the remaining $43,000 in account No. 2620 to Tamara as a nonmarital asset.

*Anthony's USAA Roth IRA, USAA IRA,*
*and Health Savings Account.*

Anthony produced evidence at trial purporting to demonstrate premarital values of three accounts: USAA Roth IRA No. 0244, USAA IRA No. 4019, and TD Ameritrade health savings account (HSA) No. 6934. With regard to the HSA, Anthony offered his 2009 "Form 5498-SA" reflecting the HSA with a fair market value of $17,445.90 as of December 31, 2009. In addition, Anthony offered the first page of his 2010 tax return showing a $6,150 contribution to the HSA at some point in 2010. Anthony testified that he "habitually" contributes to the HSA in April, such that the 2010 contribution

- 112 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

would have been made prior to the marriage in May 2010. Nevertheless, the court listed $50,026 from "TD Ameritrade HSA 6934" on Anthony's side of the balance sheet for purposes of equalizing the marital estate. This amount reflects the full value of Anthony's HSA at the time of trial without any adjustment for premarital value.

With regard to the USAA retirement accounts, Anthony produced annual account statements reflecting values of $8,853.81 for USAA Roth IRA No. 0244 and $10,031.93 for USAA IRA No. 4019 as of December 31, 2009. Anthony testified that USAA IRA No. 4019 "represents the IRA that I use to purely do the backdoor conversions to [USAA] Roth [IRA No. 0244]." Thus, the roughly $10,000 in USAA IRA No. 4019 simply reflected the yet-to-be-converted contributions to USAA Roth IRA No. 0244. The statement also reflected a roughly $5,000 contribution to USAA IRA No. 4019, which was subsequently converted into USAA Roth IRA No. 0244 on March 10, 2010. Accordingly, Anthony argued that he should be credited approximately $25,000 for the premarital values of his two USAA retirement accounts.

While Tamara did not testify as to the HSA, she seemed to concede that Anthony should be credited for the premarital values of his USAA retirement accounts. In response to questioning from her counsel, Tamara agreed, "We can't fault the $25,000 that [Anthony] could prove in premarital," adding that "if the Court makes that adjustment that would be appropriate we think." Nevertheless, the court found that USAA Roth IRA No. 0244 "shall be divided equally with a valuation date of the filing of the Complaint for Dissolution of Marriage (April 2, 2019)" without any mention of the premarital amounts demonstrated in exhibit 31. At the time of trial, USAA Roth IRA No. 0244 had a total value of $156,908.71.

*111th Street Property Valuation.*

On October 13, 2010, nearly 5 months after the marriage, the parties purchased a rental property located on South 111th

- 113 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

Street in Omaha. The parties agreed that Tamara would be awarded the 111th Street property; however, there was a dispute as to the proper value of the property for purposes of equalizing the marital estate. Anthony obtained a professional appraisal of the property, which was admitted into evidence without objection. Using the "sales comparison approach," the property had an appraised value of $180,000 as of March 12, 2020.

In contrast, Tamara testified to her opinion that the 2019 tax-assessed value was "more representative of the value" of the property. Accordingly, Tamara offered a printout of the Douglas County assessor's property record for the rental property, which listed a total value of $140,500 in 2019. On cross-examination, Tamara conceded that Anthony's appraisal report contained "a lot more individualized work" than the county assessor's property record. Tamara further admitted that she was not familiar with the methods used to arrive at the tax-assessed value and that she could not identify any particular reason for her belief that the tax assessment was more reliable than the appraisal. The court ultimately found "the value of the rental property to be $140,500," opting for the tax-assessed value.

*111th Street Property Premarital Contribution.*

In addition to the proper value of the property, there was also a dispute as to the extent to which the 111th Street property should be classified as marital property. Tamara emphasized that the property was purchased in October 2010, nearly 5 months after the parties were married, using marital funds arising out of Anthony's income. Accordingly, Tamara argued that the property should be wholly classified as marital property. In support of her position, Tamara offered a bank statement from the parties' joint account No. 9484 showing a withdrawal of roughly $82,000, which reflected the bulk of the $97,000 purchase price of the property. Anthony, on the other hand, testified that the $82,000 reflected

- 114 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

premarital funds in that he earned them prior to the marriage, but he admitted that the remaining $15,000 came from marital funds, earned after the marriage. Thus, the primary dispute revolved around the source of the $82,000 that was withdrawn from the parties' joint account and used to purchase the rental property.

Tamara noted that the account had an opening balance of roughly $41,000 on September 14, 2010, and that the statement showed a number of large deposits into the account prior to the purchase of the home on October 13. While there is no documentation as to the source of the $41,000 opening balance, Tamara testified that it would have been funded solely by Anthony's paychecks from May to September. Tamara also testified that each of the large deposits reflected Anthony's income during that statement period. For example, there is a $31,748 deposit on September 20, which Tamara testified was "a paycheck from EPA." Tamara could not recall what "EPA" stood for, but she testified that it was a company for whom Anthony worked during that time. Tamara acknowledged that $31,000 "sounds like a lot." However, she also testified that Anthony earned $125 per hour "on the low end" for a 48-hour shift, such that $31,000 is roughly equivalent to five 48-hour shifts. Moreover, Tamara testified that Anthony intentionally worked more hours leading up to the purchase of the property to accumulate the necessary funds.

In contrast, Anthony testified that he earned about $265,000 in 2010 and extrapolated from that number that he earned $20,000 per month before taxes. Despite the fact that the property was purchased over 4 months after the marriage, Anthony suggested that his gross marital earnings during that time ought to be calculated using only 2 months' income, or $40,000. Anthony testified that he would have been paid in arrears on the 15th day of each month. Thus, he indicated that his June paycheck should be excluded because it would have been associated with work done prior to the marriage and that his October paycheck would not have been deposited

- 115 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

prior to the October 13 purchase. It is unclear why Anthony believed his July paycheck should also be excluded. Moreover, exhibit 44 clearly indicates at least $33,966.25 in payroll deposits on September 20, 24, and 27, and October 1 and 8 respectively, casting doubt on Anthony's suggestion that his income came in the form of a single paycheck on the 15th day of the month.

Nevertheless, Anthony testified that it would have been impossible, in light of other expenses, for his marital income to account for the full $97,000 purchase price. Rather, Anthony's position was that $82,000, or 84½ percent of the purchase price, reflected premarital funds. Accordingly, Anthony believed that 84½ percent of the property's current value should be classified as his separate property. The court disagreed, finding that Anthony "failed to sustain his burden of proof regarding this issue and therefore all equity in the rental home is considered to be marital."

*Anthony's Navy Federal*
*Credit Union Accounts.*

Anthony testified that he maintained a checking account No. 0702 and a savings account No. 0009 with Navy Federal Credit Union. Anthony offered a single statement showing the balances in these accounts during a 1-month period ending on March 24, 2019. The statement showed one deposit of $977.36 into checking account No. 0702, which was subsequently transferred to savings account No. 0009. Anthony testified that this deposit reflected a monthly disability benefit he received from the Department of Veterans Affairs (VA) due to injuries arising out of his active-duty military service. The statement also showed a deposit of $24,328.42 into savings account No. 0009, and Anthony testified that this was a "one-time deposit" derived from closing out a Roth IRA account that had been opened in the name of Anthony's daughter from his prior marriage. As of March 24, 2019, checking account No. 0702 had a balance of $448.12 and savings account

- 116 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

No. 0009 had a balance of $64,865.32. There was no mention of either account in the court's final order; however, the court included $64,865 from "Navy Federal 8009" on Anthony's side of the balance sheet.

*Division of Personal Property.*

Tamara prepared a proposed division of personal property that was admitted into evidence without objection as exhibit 45. At trial, Anthony testified that he disagreed with Tamara's valuation of certain items, but he also offered a simplified distribution plan under which Anthony would receive certain specific items and Tamara would receive the remainder of personal property included on exhibit 45. Specifically, Anthony requested that he receive "the paintings, [their child's] furniture, the basement TV/Entertainment wall unit, the piano, the green bike, and [his] poker table." Anthony testified that if he is given those items, then Tamara "can have the rest of the marital property and no need to make a deduction for it." Tamara testified that she would accept Anthony's proposal if she is awarded one of the six paintings Anthony requested.

In its final order, the court noted that Anthony "testified the only personal property items he would like to be awarded are the green bike, poker table, basement t.v., [their child's] furniture [and] the six paintings in the home." Notably, the court omitted the piano that Anthony also requested at trial. The court awarded Anthony his requested items, with the exception of the piano—which was not mentioned—and the one painting requested by Tamara.

## ASSIGNMENTS OF ERROR

Anthony assigns that the district court erred in (1) characterizing the proceeds of Tamara's Texas properties as her nonmarital property; (2) failing to credit Anthony with the premarital values of USAA Roth IRA No. 0244, USAA IRA No. 4019, and the HSA; (3) valuing the parties' 111th Street property using its tax-assessed value rather than Anthony's

- 117 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

appraisal; (4) failing to credit Anthony with any premarital contribution toward the purchase of the 111th Street property; (5) characterizing Anthony's Navy Federal Credit Union accounts as marital property; (6) awarding alimony to Tamara; and (7) dividing personal property.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

[3,4] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *White v. White, supra.* The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *White v. White, supra.* The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id.*

- 118 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

*Tamara's First National Bank*
*Account No. 2620.*

[5] Anthony's first assignment of error pertains to the court's classification of roughly $43,000 in Tamara's separate bank account No. 2620 as nonmarital property. In a marital dissolution proceeding, the burden of proof rests with the party claiming that property is nonmarital. *Burgardt v. Burgardt, supra*. In this case, Tamara bore the burden to prove that account No. 2620 consisted of nonmarital funds.

[6] The record reflects that at the time of dissolution, the account consisted of the remaining proceeds from the sale of three properties which Tamara acquired prior to the marriage. There is no dispute that Tamara owned the three rental properties in Texas at the time of marriage. Property which a party brings into the marriage is generally excluded from the marital estate. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). However, the record also reflects that nearly $75,000 of marital income was used to pay expenses associated with the properties, including mortgage payments and repairs. Thus, the question is what is the proper classification of the Texas properties in light of this significant contribution of marital income.

On appeal, Anthony concedes that the properties "originated as nonmarital property," reply brief for appellant at 4, but he argues that the properties were converted to marital property "because the marriage spent more money maintaining the Texas properties than Tamara realized on their sale," brief for appellant at 25. Alternatively, Anthony argues that "this Court could require Tamara to reimburse the marital estate for the $74,774 of funds it expended on her properties, less the $21,000 she already contributed to joint tax returns." Brief for appellant at 25. Tamara, on the other hand, emphasizes the overall tax benefit to the marriage, derived from the roughly $60,000 tax writeoff for reported depreciation and an approximately $21,000 payment of joint tax liabilities. However, the question remains what is the impact of the

- 119 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

roughly $75,000 contribution of marital income used to cover expenses associated with the properties.

[7] The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse. *Id.* Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property. *Id.*

[8] The Nebraska Supreme Court has held that equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as the owning spouse's separate property. See, *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018); *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). However, the court emphasized that the burden to establish the amount of equity to be set off as nonmarital remains with the spouse making the claim. *Id.* In *Onstot*, the court concluded that the owning spouse failed to meet the burden to establish the equity at the time of marriage because the record failed to establish "whether the residence was either encumbered or unencumbered at that time and, if encumbered, to what extent." 298 Neb. at 904, 906 N.W.2d at 306. Accord *Harris v. Harris, supra*. In *Harris*, the court noted that "[d]uring the parties' marriage, equity in the house grew, in part due to mortgage payments made from marital income . . . which growth in equity should be divided equitably between the parties." 298 Neb. at 85, 621 N.W.2d at 499-500. In both cases, the court concluded it was proper, in light of the failure to establish the alleged portion of nonmarital equity, to include the entirety of the equity at the time of dissolution in the marital estate.

- 120 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

In this case, there was no evidence presented as to the value of Tamara's Texas properties at the time of marriage. Moreover, while the record indicates that the properties were encumbered at the time of marriage, there was no evidence as to the extent of such encumbrances. To whatever extent the properties were encumbered at the time of marriage, the equity in the properties grew during the marriage, at least in part due to mortgage payments from marital income. Moreover, marital income was used to pay for repairs and other expenses associated with the properties. To be consistent with *Onstot* and *Harris*, Tamara was entitled to have the equity in the properties at the time of marriage, to the extent such was established, set aside as her separate property. However, Tamara failed to present any evidence of the value of the properties or extent of the encumbrances at that time. Thus, Tamara failed to meet her burden to establish the equity in the properties at the time of marriage.

With regard to the growth in equity during the marriage, we conclude such constituted active appreciation through marital contributions. In light of Tamara's failure to establish the alleged portion of nonmarital equity, the entirety of the equity at the time of dissolution should have been included in the marital estate. Thus, we conclude the district court abused its discretion by classifying the remaining sale proceeds in account No. 2620 as Tamara's separate property. Accordingly, we modify the court's balance sheet as illustrated in the attached modified balance sheet, appendix A, and affirm as modified.

*Anthony's USAA Roth IRA,*
*USAA IRA, and HSA.*

Anthony's second assignment of error pertains to the court's failure to account for premarital values of his USAA Roth IRA No. 0244, USAA IRA No. 4019, and TD Ameritrade HSA No. 6934. On appeal, Anthony seeks credit for the premarital values of these accounts, amounting to a total of

- 121 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

$49,290.05. Tamara does not dispute that the district court should have credited Anthony with the premarital values of these accounts, but she disputes the amount of premarital value supported by the evidence. Tamara argues that Anthony should receive credit for only $36,331.64. This discrepancy arises from the parties' differing interpretations of exhibits 30 and 31.

With regard to USAA IRA No. 4019, there is no dispute that exhibit 31 demonstrates a premarital value of $10,031.93. Accordingly, we conclude the district court abused its discretion in failing to credit Anthony with the premarital value of $10,031.93 in USAA IRA No. 4019.

With regard to the USAA Roth IRA No. 0244, Tamara concedes that exhibit 31 demonstrates a premarital value of $8,853.81 as of December 31, 2009. However, Tamara disagrees that Anthony should also be given credit for a contribution of $5,008.62 made in 2010, because she believes that exhibit 31 fails to demonstrate that contribution was made prior to the marriage in May 2010. Anthony, on the other hand, argues that exhibit 31 demonstrates that the $5,008.62 contribution was made on March 10, 2010. Indeed, the account statement shows a number of contributions, adding up to $5,008.62, which were apparently made on March 10. Accordingly, Anthony seeks to have $15,662.22, the full portfolio value as of December 31, 2010, deducted from the marital estate. Indeed, the full portfolio value as of that date consists of Anthony's premarital contributions plus interest which accrued solely due to market forces, without any further efforts or contributions during the marriage. See *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015) (finding it was abuse of discretion to include, as part of marital estate, increase in value of premarital portion of retirement account when increase was not due to efforts of parties or contribution of marital funds). Accordingly, we conclude the district court abused its discretion in failing to credit Anthony with the premarital value of $15,662.22 in his USAA Roth IRA No. 0244.

- 122 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

[9] With regard to the TD Ameritrade HSA No. 6934, Tamara concedes that exhibit 30 demonstrates a premarital value of $17,445.90 as of December 31, 2009. Anthony argues he should also be given credit for a $6,150 contribution made sometime in 2010. Anthony testified that he made this contribution in April 2010; however, unlike the 2010 contribution to his Roth IRA, there is no documentary evidence to support Anthony's claim. While the Supreme Court has made clear that documentary evidence is not strictly necessary for parties to carry their burden of proof, the court went on to say that "[o]f course, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion." *Burgardt v. Burgardt*, 304 Neb. 356, 365, 934 N.W.2d 488, 495 (2019). We conclude the district court abused its discretion in failing to account for $17,445.90 of premarital value in Anthony's HSA No. 6934. However, based on the record before us, we cannot say it was an abuse of discretion for the court to reject Anthony's testimony that his 2010 contribution was made prior to the parties' marriage.

We conclude that altogether, the evidence demonstrates a total premarital value of $43,140.05 in the three accounts described above. The district court abused its discretion in failing to account for the proven premarital values in these accounts. Accordingly, we modify the court's balance sheet as illustrated in the attached modified balance sheet, appendix A, and affirm as modified.

*111th Street Property Valuation.*

[10] Anthony's third assignment of error pertains to the court's decision to reject Anthony's appraisal of the 111th Street property and adopt the tax-assessed value. Triers of fact are not required to take an expert's opinion as binding upon them, and a trier of fact may accept or reject an opinion from an expert witness. *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992). In this case, the district court rejected the expert appraisal obtained by Anthony

- 123 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

and adopted the tax-assessed value of the property instead. This was a matter left to the sound discretion of the district court. Based on the record before us, we cannot say it was an abuse of discretion to reject Anthony's appraisal in favor of the tax-assessed value of the property. Accordingly, we affirm the court's valuation of the 111th Street property.

*111th Street Property Premarital Contribution.*

Anthony's fourth assignment of error pertains to the court's failure to credit him with an alleged premarital contribution to the parties' purchase of the 111th Street property. The record demonstrates that the parties purchased the property during the marriage using approximately $82,000 from the parties' joint account No. 9484 and an additional $15,000, the latter of which Anthony conceded to be marital funds. With regard to the former $82,000, Tamara testified that it consisted entirely of Anthony's income during the marriage. In contrast, Anthony testified it would have been impossible, in light of other expenses, to have accumulated that amount in the time between the marriage and the purchase of the property.

Exhibit 44 shows an opening balance of $41,676.90 and a number of large deposits into joint account No. 9484 in the month leading up to the purchase of the property. Tamara argues that the opening balance, as well as each of the large deposits, reflected Anthony's income earned during the marriage. Anthony concedes that exhibit 44 "undisputedly" demonstrates $33,966 of income during that month. Brief for appellant at 34. However, Anthony asserts that exhibit 44 "doesn't answer the question of the $41,676.90 opening balance, and the $31,748.60 deposit." *Id.* When cross-examining Tamara regarding exhibit 44 at trial, Anthony's counsel noted the "vague reference to $31,000 coming in," and he pointed out, "[I]t's impossible for us to tell where [the $41,000 opening balance] came from." Despite effectively conceding that the source of those funds was an open question, Anthony goes on to assert that he "adequately proved" that those funds were derived from a nonmarital source. Brief for appellant at 36.

- 124 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

Having heard and observed the conflicting evidence on this point, the district court found that Anthony failed to sustain his burden to prove the alleged premarital contribution. Based on the record before us, we cannot say that was an abuse of discretion. Accordingly, we affirm the court's classification of the 111th Street property as wholly marital property.

*Anthony's Navy Federal*
*Credit Union Accounts.*

Anthony's fifth assignment of error pertains to the court's classification of his Navy Federal Credit Union accounts as marital property. In support of his position that these accounts ought to be considered nonmarital property, Anthony offered a single bank statement showing the balance of these accounts as of March 24, 2019. At that time, there was $448.12 in checking account No. 0702. The court apparently classified this account as nonmarital property, as there was no mention of it in the court's order or on the balance sheet. However, the court classified the $64,865 in savings account No. 0009 as marital property and listed this amount on Anthony's side of the balance sheet.

Anthony testified that the $64,865 consisted of his monthly VA disability benefit, along with a "one-time deposit" of $24,328.42 derived from cashing out a Roth IRA in the name of his daughter from a prior marriage. On appeal, Anthony emphasizes that "VA disability benefits are beyond the jurisdiction of the District Court in a dissolution proceeding" such that it is "an abuse of discretion to divide service-connected disability benefits in a dissolution proceeding." Brief for appellant at 37 (citing *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999), and *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017)).

In *Ryan v. Ryan, supra*, the dissolution decree mandated the spouse receiving VA benefits to pay one-half of such benefits directly to the other spouse. The Supreme Court voided that portion of the decree on the grounds that "federal law

precludes a state court, in a dissolution proceeding, from exercising subject matter jurisdiction over VA disability benefits." *Id.* at 691, 600 N.W.2d at 745. The present case is distinguishable from *Ryan* in that the district court did not order Anthony to pay any of his VA benefits directly to Tamara. Rather, this case is more analogous to the circumstances in *Donald v. Donald, supra*, where proceeds from VA disability benefits were erroneously included in the marital estate and used to calculate the equalization payment.

In *Donald*, one spouse received a lump-sum disability benefit payment, which the trial court classified as the receiving spouse's marital property for purposes of equalizing the marital estate. The Supreme Court reversed, finding that the evidence "clearly established" the lump-sum payment was for retroactive service-connected disability benefits, which cannot be included as part of the marital estate in a dissolution proceeding. *Id*. at 132, 892 N.W.2d at 107. Thus, in *Donald*, the evidence was clear that the funds divided in the dissolution were exclusively VA benefits. That is not the case here.

On the contrary, Anthony admitted that at least $24,328.42 in savings account No. 0009 was derived from his daughter's Roth IRA, and he failed to present any evidence as to the source and timing of contributions to that account. While Anthony testified that the remainder of funds in savings account No. 0009 consisted exclusively of VA benefits, he offered only a single bank statement from March 2019, documenting at most $977.36 in VA benefits. It was Anthony's burden to prove the extent to which $64,865 in savings account No. 0009 was derived from a nonmarital source. See *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019) (while nonmarital interest in property may be established by credible testimony, triers of fact have right to test credibility of witnesses by their self-interest and to weigh it against evidence, or lack thereof; evidence not directly contradicted is not necessarily binding on triers of fact and may be given no weight where it is inherently improbable, unreasonable,

- 126 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

self-contradictory, or inconsistent with facts or circumstances in evidence). Certainly, the district court could have believed Anthony's testimony regarding the source of these funds. Therefore, given the limited evidence on that point, we cannot say it was an abuse of discretion for the district court to classify the $64,865 as marital property. Accordingly, we affirm the court's classification of Navy Federal Credit Union savings account No. 0009 as marital property for purposes of equalizing the marital estate.

*Alimony.*

Anthony's sixth assignment of error pertains to the court's order that Anthony shall pay Tamara alimony in the sum of $1,000 per month for a period of 12 months. Section 42-365 provides as follows:

> [T]he court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

[11,12] In addition to the criteria listed in § 42-365, in considering alimony upon a dissolution of marriage, a trial court is to consider the income and earning capacity of each party, as well as the general equities of each situation. *Becker v. Becker*, 20 Neb. App. 922, 834 N.W.2d 620 (2013). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id.* In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial

- 127 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.*

In this case, the parties were married for approximately 10 years. Shortly after the parties were married, Tamara left her career as an attorney in New York to be a full-time parent to Anthony's two children from a prior marriage. Thereafter, the parties had a child of their own, and Tamara continued as a full-time parent until 2018, resulting in a roughly 7-year interruption in her legal career. When Tamara returned to full-time employment, she took a job with the Douglas County public defender's office, making $70,500 per year, which remained Tamara's salary at the time of trial. Anthony, on the other hand, was making $320,000 per year at the time of trial.

The district court concluded as follows:

> Based on the factors set forth in . . . § 42-365, specifically, the circumstances of the parties; the duration of the marriage; the history of the contributions to the marriage, including contributions to the care and education of the minor child; the interruption of a personal career on the part of [Tamara]; and the parties' income disparity, the Court finds that [Anthony] shall pay [Tamara] alimony.

Based on our review of the record, we cannot say the district court's alimony award amounted to an abuse of discretion. Accordingly, we affirm the court's award of alimony.

*Division of Personal Property.*

Anthony's seventh and final assignment of error pertains to the district court's division of personal property. On appeal, Anthony points out that "[t]his case presented the unique circumstances of the parties continuing to live together with the case pending *and* being unable to resolve their differences, necessitating a trial." Brief for appellant at 18 (emphasis in original). It was not until the day of trial that the parties agreed Tamara would move out of the home, such that the parties had not yet divided their personal property.

- 128 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

In its final order, the court relied on exhibit 45 and Anthony's testimony to dispose of a number of specific household goods and miscellaneous personal property. However, Anthony argues that the court's final order "is largely silent on who is awarded the majority of household goods," such as each party's clothing and personal effects. Brief for appellant at 40. We agree. Accordingly, we modify the court's decree to award each party his or her personal clothing, memorabilia, and personal effects, including any premarital personal property and other items agreed upon by the parties.

We otherwise find that the court's order clearly identifies the specific items which were awarded to Anthony. In accordance with Anthony's testimony at trial, we presume the remainder of the personal property listed on exhibit 45 and not addressed in the court's order was awarded to Tamara. Of the items Anthony requested at trial, the court awarded him all but two: one of the six paintings and the piano. Tamara testified that Anthony's proposed division of property was agreeable so long as she received one of the six paintings, and it was not an abuse of discretion for the court to abide by this request. We note, however, that there is no mention of the piano in the court's order. Anthony specifically requested the piano as part of his proposed division of property, and Tamara did not take issue with that request. Accordingly, the court's failure to address the piano was an abuse of discretion. Accordingly, we modify the division of personal property to award the piano to Anthony, and we affirm the district court's division of personal property as modified herein.

## CONCLUSION

With regard to Anthony's third through sixth assignments of error, we conclude the record fails to demonstrate an abuse of discretion, and thus, we affirm the order of the district court on those issues. With regard to Anthony's first assignment of error, we conclude the district court abused its discretion in classifying the remaining proceeds of Tamara's Texas

- 129 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
MONTEGUT v. MOSBY-MONTEGUT
Cite as 31 Neb. App. 107

properties as her separate property. Accordingly, we modify the court's balance sheet as illustrated in the attached modified balance sheet, appendix A, and affirm as modified. With regard to Anthony's second assignment of error, we conclude the district court abused its discretion in failing to account for proven premarital values in Anthony's USAA Roth IRA No. 0244, USAA IRA No. 4019, and TD Ameritrade HSA No. 6934. Accordingly, we modify the court's balance sheet as illustrated in the attached modified balance sheet, appendix A, and affirm as modified. In accordance with the modified balance sheet, we also modify paragraph "r." of the decree of dissolution and order that Tamara pay Anthony an equalization judgment in the sum of $26,224, which judgment shall be paid from Tamara's share of the proceeds from the sale of the marital home. With regard to Anthony's seventh assignment of error, we modify the court's division of personal property as set forth above, and we affirm as modified.

AFFIRMED AS MODIFIED.

(*See page 130 for appendix A.*)

# APPENDIX A
## Modified Balance Sheet

| Plaintiff (Anthony) | | Defendant (Tamara) | |
|---|---|---|---|
| | | Rental real estate located at 5641 S. 111th Street | $140,500 |
| 15221 Sprague Street Increase in value during the marriage | | | |
| Household goods and miscellaneous personal property (exhibit 45) | Requested items, less one of six paintings | Household goods and miscellaneous personal property (exhibit 45) | Requested painting, plus remainder |
| | | Wedding band | $1,500 |
| | | | |
| 2011 Honda Pilot | Equal value | 2011 Honda Pilot | Equal value |
| | | | |
| First National Bank 4617 | $33,998 | First National Bank 4026 | $500 |
| Navy Federal 8009 | $64,865 | First National Bank 2620 (proceeds from Texas properties) | $42,363 |
| TD Ameritrade HSA 6934 | $32,580 | | |
| USAA 7744 | $4,678 | | |
| 50% Defendant's Fidelity Roth IRA | | 50% Defendant's Fidelity Roth IRA | |
| Plaintiff's Fidelity 401(k) 8805 divided as set forth in paragraph p. of the decree of dissolution of marriage | | Plaintiff's Fidelity 401(k) 8805 divided as set forth in paragraph p. of the decree of dissolution of marriage | |
| 50% - Plaintiff's Charles Drew 401(k) | | 50% - Plaintiff's Charles Drew 401(k) | |
| 50% - Plaintiff's USAA Roth IRA 0244 (less $25,694.15 in proven premarital value) | | 50% - Plaintiff's USAA Roth IRA 0244 (less $25,694.15 in proven premarital value) | |
| 50% - Plaintiff's USAA IRA 6645 | | 50% - Plaintiff's USAA IRA 6645 | |
| | | Douglas County pension | $3,705 |
| **Total nonretirement assets** | **$136,121** | **Total nonretirement assets** | **$188,568** |
| | | | |
| + Property settlement to equalize marital estate | $26,224 | - Property settlement to equalize marital estate | -$26,224 |
| | | | |
| **NET MARITAL ESTATE** | **$162,345** | **NET MARITAL ESTATE** | **$162,344** |